2015-1276, 1287

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

MARK DAVID, A DIVISION OF BAKER, KNAPP & TUBBS, INC., MGM RESORTS INT'L DESIGN, METROPOLIS MANUFACTURING, INC. DBA VAUGHAN BENZ, and BRYAN ASHLEY INTERNATIONAL,

Plaintiffs – Appellants,

v.

THE UNITED STATES, and AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE,

Defendants – Appellees.

_____

Appeals from the United States Court of International Trade
in consolidated case no. 13-00233, Senior Judge Nicholas Tsoucalas

_____

BRIEF OF PLAINTIFF-APPELLANT
MARK DAVID, A DIVISION OF BAKER, KNAPP & TUBBS, INC.

_____

Alexander H. Schaefer
Hea Jin (Jini) Koh
CROWELL & MORING LLP
1001 Pennsylvania Ave, N.W.
Washington, D.C.  20004
Phone:  (202) 624-2500
Facsimile:  (202) 628-5116
aschaefer@crowell.com

Dated:       March 23, 2015        Counsel for Mark David, a division of
                                   Baker, Knapp & Tubbs, Inc.

## <u>CERTIFICATE OF INTEREST</u>

Mark David, a division of Baker, Knapp & Tubbs, Inc. v. US

2015-1276, 1287

Certificate of Interest

Counsel for Plaintiffs-Appellant Mark David, a division of Baker, Knapp & Tubbs, Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:

        Mark David, a division of Baker, Knapp & Tubbs, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

        Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

        Mark David, a division of Baker, Knapp & Tubbs, Inc. is part of the Kohler Co. Interiors Group, which is wholly owned subsidiary of Kohler Co.. Kohler Co. is a private company.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

        Crowell & Moring LLP
        Alexander H. Schaefer; Hea Jin Koh

                    /s/ Alexander H. Schaefer
                    _____
                    Alexander H. Schaefer
                    Crowell & Moring LLP

Dated:  March 23, 2015

# **TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………i

TABLE OF AUTHORITIES…………………………………………………...ii

STATEMENT OF THE ISSUES...............................................................................2

STATEMENT OF THE CASE................................................................................2

STATEMENT OF THE FACTS .............................................................................2

SUMMARY OF THE ARGUMENT .....................................................................7

ARGUMENT .........................................................................................................8

I.      Standard of Review..................................................................................8

II.     The Department's Use of the 216.01 Percent Margin as the PRC-wide rate is Unsupported by Substantial Evidence on the Record and Not in Accordance with Law ..........................................................................................................8

III.    The Department's Application of the 216.01 percent PRC-wide margin to Shanghai Maoji Despite Intervening and Contradictory Evidence is Punitive Rather Than Remedial .................................................................................16

CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Dongtai Peak Honey Indus. Co., Ltd. v. United States*,
  777 F.3d 1343 (Fed. Cir. 2015) ...................................................................9, 13

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ................................................................. 16-17

*F.Lii De Cecco DiFilippo Fara S. Martino S.p.A. v. United States*,
  216 F.3d 1027 (Fed. Cir. 2000) .......................................................................16

*KYD, Inc. v. United States*,
  807 F. Supp. 2d 1372 (Ct. Int'l Trade 2012) .................................................8, 16

*Lifestyle Enter., Inc. v. United States*,
  768 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ...............................................*passim*

*Lifestyle Enter., Inc. v. United States*,
  896 F. Supp. 2d 1297 (Ct. Int'l Trade 2013) ...............................................10, 11

*MacLean-Fogg Co. v. United States*,
  853 F. Supp. 2d 1336 (Ct. Int'l Trade 2012) .....................................8, 11, 15, 17

*Mark David v. United States*,
  24 F. Supp. 3d 1355 (Ct. Int'l Trade 2014) .................................................2, 5, 6

*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008) .........................................................................7

*Peer Bearing Co.-Changshan v. United States*,
  587 F. Supp. 2d 1319 (Ct. Int'l Trade 2008) ......................................................8

**Statutes**

19 U.S.C. § 1516a(a)(2)(A)(i)(I)...............................................................1, 7

19 U.S.C. §§ 1671 *et. al.* ............................................................................7

19 U.S.C § 1675(a) ....................................................................................1

19 U.S.C. § 1677b(c)(1) ..................................................................................7, 17

19 U.S.C. § 1677e ......................................................................................11, 16

28 U.S.C. § 1581(c) ...........................................................................................1

28 U.S.C. § 1295(a)(5) .......................................................................................1

28 U.S.C. § 2107(b) ...........................................................................................1

**Rules**

Fed. R. App. P. 4(a)(1)(B) .................................................................................1

Ct. App. Fed. Cir. R. 28 .....................................................................................1

Ct. App. Fed. Cir. R. 47.5 ..................................................................................1

**Administrative Determinations and Notices**

*Honey From the People's Republic of China: Final Rescission of
     Antidumping Duty Administrative Review*, 77 Fed. Reg. 34,343
     (Dep't. of Commerce June 11, 2012) ................................................................13

*Notice of Amended Final Determination of Sales at Less Than Fair
     Value and Antidumping Duty Order: Wooden Bedroom Furniture
     from the People's Republic of China,* 70 Fed. Reg. 329 (Dep't of
     Commerce Jan. 4, 2005) ...........................................................................*passim*

*Wooden Bedroom Furniture from the People's Republic of China:
     Final Results of the 2004-2005 Semi-Annual New Shipper Reviews*,
     71 Fed. Reg. 70,739 (Dep't of Commerce Dec. 6, 2006)....................................9

*Wooden Bedroom Furniture from the People's Republic of China:
     Final Results of Antidumping Duty Administrative Review and New
     Shipper Review*, 73 Fed. Reg. 49,162 (Dep't of Commerce Aug.
     20, 2008) .......................................................................................................12

*Wooden Bedroom Furniture from the People's Republic of China:
     Final Results of Fourth New Shipper Reviews*, 73 Fed. Reg. 64,916
     (Dep't of Commerce Oct. 31, 2008).................................................................12

*Wooden Bedroom Furniture from the People's Republic of China: Amendment Final Results of Antidumping Duty Administrative Review and New Shipper Review*, 74 Fed. Reg. 55,810 (Dep't of Commerce Oct. 29, 2009)....................................................................12

*Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty New Shipper Review*, 75 Fed. Reg. 44,764 (Dep't of Commerce July 29, 2010) .............................................12

*Wooden Bedroom Furniture from the People's Republic of China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (Dep't of Commerce Aug. 18, 2010).................................................12

*Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty New Shipper Reviews*, 76 Fed. Reg. 9747 (Dep't of Commerce Feb. 22, 2011) ...................................12

*Wooden Bedroom Furniture from the People's Republic of China: Final Results and Final Rescission in Part*, 76 Fed. Reg. 49,729 (Dep't of Commerce Aug. 11, 2011)...........................................13, 15

*Wooden Bedroom Furniture from the People's Republic of China: Corrected Notice of Court Decision Not in Harmony with the Final Determination of Sales at Less Than Fair Value and Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order Pursuant to Court Decision,* 76 Fed. Reg. 53,409 (Dep't of Commerce Aug. 26, 2011) .................................................3

*Wooden Bedroom Furniture from the People's Republic of China: Final Results of the 2010 Antidumping Duty New Shipper Review*, 76 Fed. Reg. 68,138 (Dep't of Commerce Nov. 3, 2011) ..................................13

*Wooden Bedroom Furniture from the People's Republic of China: Initiation of Administrative Review,* 77 Fed. Reg. 12,235 (Dep't of Commerce Feb. 29, 2012).....................................................................2

*Wooden Bedroom Furniture from the People's Republic of China, Preliminary Results of Antidumping Duty Administrative Review; 2011*, 78 Fed. Reg. 8,493 (Dep't of Commerce Feb. 6, 2013)............................4

*Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011*, 78 Fed. Reg. 35,249 (Dep't of Commerce June 12, 2013)............................5, 13

Memorandum from Christian Marsh to Ronald Lorentzen, *"Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Wooden Bedroom Furniture from the People's Republic of China"* (Dep't of Commerce Aug. 5, 2011) ............................................................................15

Memorandum from Christian Marsh, Deputy Assistant Secretary  for Antidumping and Countervailing Duty Operations to Paul Piquado, Assistant Secretary for Import Administration, *"Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Wooden Bedroom Furniture from the People's Republic of China"* (Dep't of Commerce Jan. 30, 2013) ...............4, 10

Memorandum from Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations to Paul Piquado, Assistant Secretary for Import Administration, *"Wooden Bedroom Furniture from the People's Republic of China: Issues and Decision Memorandum for the Final Results of Review"* (Dep't. of Commerce June 5, 2013) ............................................................................5, 14

## STATEMENT OF RELATED CASES

In accordance with Rules 28 and 47.5 of the Rules of the U.S. Court of Appeals for the Federal Circuit, counsel for plaintiff-appellant Mark David, a division of Baker, Knapp & Tubbs, Inc. ("Mark David") in unaware of any other cases appealing the same civil action or proceeding and is also unaware of any cases that will directly affect or be directly affected by this Court's decision.

## STATEMENT OF JURISDICTION

Appellate jurisdiction exists under 28 U.S.C. § 1295(a)(5) (2006), which empowers this Court to review final decisions of the U.S. Court of International Trade ("CIT"). The CIT had jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(i)(I) (2006), which empowers that court to review final determinations of the U.S. Department of Commerce made under 19 U.S.C § 1675(a). That provision formed the basis of the Department's determination at issue here.

This appeal was timely filed on January 16, 2015; that is, within sixty days of the CIT's final decision of November 18, 2014. 28 U.S.C. § 2107(b); Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

This appeal raises the following issue:

Whether the Department's decision in the 2011 administrative review to continue using 216.01 percent as the PRC-wide entity rate and to apply that rate to Shanghai Maoji Import and Export Corporation Limited ("Shanghai Maoji") is supported by substantial evidence and is otherwise in accordance with law.

Mark David's Answer: No.

## STATEMENT OF THE CASE

This is an appeal from the CIT's final decision in *Mark David, a division of Baker, Knapp & Tubbs, Inc. v. United States*, 24 F. Supp. 3d 1355 (Ct. Int'l Trade 2014), in which the CIT affirmed the Department's decision to continue assigning 216.01 percent as the PRC-wide entity rate and to apply that rate to Shanghai Maoji.

## STATEMENT OF THE FACTS

On January 4, 2005, the Department published an antidumping duty order covering certain WBF from the PRC. *See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China,* 70 Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005) (the "Order"). On February 29, 2012, the Department initiated the seventh administrative review of the order covering entries made during the 2011 calendar year. *See Wooden Bedroom Furniture from the People's Republic of China: Initiation of Administrative Review,* 77 Fed. Reg. 12,235 (Dep't

of Commerce Feb. 29, 2012). During the 2011 period of review ("POR"), Mark David had imported subject WBF exported by Shanghai Maoji, a Hong Kong-based trading company and exporter of WBF from China.

Shanghai Maoji had been granted separate rate status in the initial investigation and had not lost that status during any subsequent review. Thus, its final company-specific deposit rate determined during the investigation (as modified by subsequent litigation) was 6.68 percent. *See Wooden Bedroom Furniture from the People's Republic of China: Corrected Notice of Court Decision Not in Harmony with the Final Determination of Sales at Less Than Fair Value and Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order Pursuant to Court Decision,* 76 Fed. Reg. 53,409 (Dep't of Commerce Aug. 26, 2011). In the 2011 review, Shanghai Maoji timely filed a separate rate certification demonstrating a continued absence of *de jure* and *de facto* control by the PRC government. *See* Letter from White & Case LLP to John Bryson, Secretary of Commerce, "*Wooden Bedroom Furniture from the People's Republic of China*," IA Docket No. 3063435-01 (Mar. 15, 2012); JA 000049 - 000072 The Department selected Shanghai Maoji as a mandatory respondent. After submitting Section A and C responses to the Department's questionnaires, Shanghai Maoji withdrew from the review because it was unable to secure the cooperation of the unrelated manufacturers from which it had purchased

3

the subject merchandise it exported; absent that cooperation, Shanghai Maoji could not respond to the balance of the Department's questionnaires.  *See* Letter from White & Case LLP to Rebecca Blank, Acting Secretary of Commerce, "*Wooden Bedroom Furniture from China*," IA Docket No. 3090533-01 (Aug. 3, 2012); JA 000073 - 000079.

The Department issued its preliminary results on February 6, 2013.  *See Wooden Bedroom Furniture from the People's Republic of China, Preliminary Results of Antidumping Duty Administrative Review; 2011*, 78 Fed. Reg. 8,493 (Dep't of Commerce Feb. 6, 2013).  In its preliminary decision memorandum, the Department noted that it "has assigned as {adverse facts available ("AFA")} a rate of 216.01 percent to the PRC-wide entity, including {Shanghai} Maoji and Huansheng.  This is the highest rate on the record of the proceeding, and the rate currently applicable to the PRC-wide entity."   Memorandum from Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations to Paul Piquado, Assistant Secretary for Import Administration, "*Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review:  Wooden Bedroom Furniture from the People's Republic of China* ("Preliminary Results")" at 14 (Dep't of Commerce Jan. 30, 2013); JA 000038.  The Department further stated that this rate had been calculated and corroborated in the final results of the 2004-2005 review because it "was 'within

4

the range of the calculated margins on the record of the {5th} administrative review.'" *Id.* at 15; JA 000039. The Department continued to apply the 216.01 percent rate as the PRC-wide entity rate. *See Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011*, 78 Fed. Reg. 35,249 (Dep't of Commerce June 12, 2013) ("*2011 Final Results*"); JA 000008 – 000010 and accompanying Memorandum from Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations to Paul Piquado, Assistant Secretary for Import Administration, "*Wooden Bedroom Furniture from the People's Republic of China: Issues and Decision Memorandum for the Final Results of Review"* ("2011 *Final Results* IDM") at 8-11 (Dep't. of Commerce June 5, 2013); JA 000011 – 000024. Mark David appealed the *Final Results* to the CIT. *See Mark David*, 24 F. Supp. 3d at 1355; JA 000001 – 000007.

Mark David challenged the Department's continued use of the 216.01 percent margin as the PRC-wide rate, contending that it was unsupported by substantial evidence on the record, did not reflect Shanghai Maoji's commercial reality, was not corroborated by recent reviews and was contrary to CIT precedent. *See generally, Mark David Mot. Summ. J. Agency R*; JA 000080 – 000099. In particular, Mark David pointed out that the 216.01 percent margin was derived from a 2004-2005 new shipper review for a different company, and that the nine

intervening review results (including new shipper reviews) had rendered that margin unreliable and out of date. *Id.*

In its decision, the CIT stated that "[b]ecause Maoji was part of the PRC-wide entity, Commerce was not required to calculate a separate AFA rate relevant to Maoji's commercial reality." *Mark David*, 24 F. Supp. 3d at 1360; JA 000006. The CIT also was unpersuaded by the fact that the Department had calculated significantly lower rates in other administrative reviews under the Order, stating that these "rates were not assigned to respondents who were considered to be a part of the PRC-wide entity." *Id.* The CIT further stated that the Department determination to continue using the 216.01% rate for the PRC-wide entity that was purportedly last "corroborated" in the 2009 administrative review was reasonable because "Plaintiffs had not provided evidence indicating that this rate was unreliable . . . and the evidence Plaintiffs provided lacked probative value. . . ." *Id.* at 1361; JA 000007. Finally, the CIT stated that the 216.01% rate was not punitive because "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure." *Id.* at 1361; JA 000007. In light of that analysis, the CIT affirmed the Department's decision to apply the 216.01% rate to Shanghai Maoji as a part of the PRC-wide entity.

6

# SUMMARY OF THE ARGUMENT

The statute and precedent are clear: when the Department calculates a margin based on the application of "adverse facts available" ("AFA"), it cannot continue to rely on that calculation and apply that margin in perpetuity. Rather, the Department has an obligation to ensure that the AFA margin is reasonable and corroborated. In the underlying administrative proceeding, the Department failed to take even the most minimal of steps to corroborate the margin, relying instead on long-outdated and otherwise irrelevant analyses. By allowing the Department to ignore its obligation to independently corroborate the AFA margin and ensure that it reflects present commercial reality (albeit with a built-in incentive to encourage future compliance), the CIT erred. The court already had found that the 216.01 percent AFA margin based on AFA as the PRC-wide entity rate was unreasonable and uncorroborated in an earlier administrative review; the fact that it served as the basis for an AFA rate in the instant case did not render it any more appropriate. Indeed, every respondent rate calculated by the Department in every review proceeding since the 216.01 percent PRC-wide margin emerged has been far lower – this is incontrovertible evidence that the 216.01 percent is outdated and no longer reflects the commercial reality of *any* WBF exporter. The Court should reverse the CIT and order that the CIT remand this matter and require the Department to reexamine the PRC-wide entity rate.

7

## **ARGUMENT**

### I.    **Standard of Review**

This court reviews decisions of the CIT *de novo*, "apply[ ing] anew the same standard used by the [CIT]." *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380 (Fed. Cir. 2008). Thus, this Court's standard of review of the Department's determination in an antidumping administrative review is to uphold the Department's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law. . . ." 19 U.S.C. § 1516a(b)(1)(B)(i) (2006).

### II.    **The Department's Use of the 216.01 Percent Margin as the PRC-wide rate is Unsupported by Substantial Evidence on the Record and Not in Accordance with Law**

The Tariff Act of 1930, codified in relevant part as 19 U.S.C. §§ 1671, *et. al.* ("the Act"), requires that the Department determine the antidumping duty margins in nonmarket economy countries using the "best available information." 19 U.S.C. § 1677b(c)(1)(B). The same standard applies when determining the PRC-wide entity rate. This Court has held that the PRC-wide rate "must be based on *reliable evidence in the record and must be relevant to the all-others respondents*." *MacLean-Fogg Co. v. United States*, 853 F. Supp. 2d 1336, 1340-41 (Ct. Int'l Trade 2012), 753 F.3d 1237 (Fed. Cir. 2014) ( *reversed* other grounds) (emphasis supplied). Moreover, the Department's "responsibility is to choose 'a rate that, on this record, could reasonably be accepted as an approximation of { . . . } {the all-

others companies'} rate, albeit with a built-in increase intended as a deterrent to non-compliance.'" *Id.* at 1341 (citing *KYD, Inc. v. United States*, 807 F. Supp. 2d 1372, 1378 (Ct. Int'l Trade 2012) *aff'd*, 520 Fed. Appx. 956 (Fed. Cir. 2013)). The rate also must reflect "commercial reality." *Lifestyle Enter., Inc. v. United States*, 768 F. Supp. 2d 1286, 1298 (Ct. Int'l Trade 2011) ("*Lifestyle I*"). The Department may only rely on the AFA rate from a prior segment of a proceeding, if (1) the rate has been corroborated and (2) no party submits information that sufficiently undermines the reliability or relevance of the rate. *See Peer Bearing Co.-Changshan v. United States*, 587 F. Supp. 2d 1319, 1328 (Ct. Int'l Trade 2008). A PRC-wide rate "based on AFA must have a rational relationship to the specific company to which it is applied." *Id.* at 1327. And "{a}s the {AFA} rate becomes larger and greatly exceeds the rates of cooperating respondents, Commerce must provide a clearer explanation for its choice and ample record support for its determination." *Lifestyle I* at 1298. When corroborating the AFA rate from a prior segment, the Department must corroborate that information to the extent possible and the corroborating information must have "'probative value' by demonstrating the rate is both reliable and relevant." *Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 777 F.3d 1343, 1355 (Fed. Cir. 2015) (internal citations omitted).

The 216.01 percent rate that is the PRC-wide entity rate was calculated for a different exporter (Kunyu) during the 2004-2005 new shipper review of the WBF

order. *See Wooden Bedroom Furniture from the People's Republic of China: Final Results of the 2004-2005 Semi-Annual New Shipper Reviews*, 71 Fed. Reg. 70,739 (Dep't of Commerce Dec. 6, 2006). Several years later, during the administrative review of the order for the 2007 calendar year, the Department applied this rate as AFA to an uncooperative mandatory respondent known as Orient International. *See Lifestyle I* at 1297. When an importer challenged the use of that rate in the 2007 review, this Court agreed that the 216.01 percent margin as an AFA rate for a non-cooperating mandatory respondent was not supported by substantial evidence on the record. *See Lifestyle I* at 1299. Thus in *Lifestyle Enterprise, Inc. v. United States*, the Court upheld the Department's third remand determination applying an AFA rate of 83.55 percent to Orient International in the 2007 review. 896 F. Supp. 2d 1297 (Ct. Int'l Trade 2013) ("*Lifestyle IV*"), 751 F.3d 1371 (Fed. Cir. 2014) (*affirm in part, reverse in part and remanded* on other grounds). Orient International, like Shanghai Maoji, was selected as a mandatory respondent but was unable to participate fully in the review. The Department initially attempted to justify the 216.01 rate on the same reasoning provided here: that it "was 'within the range of the margins calculated on the record of the {5[th]} administrative review.'" *Lifestyle I* at 1297; *see also Preliminary Results* at 14. The Department had calculated the rate at issue (216.01 percent) by taking a previously reviewed respondent's sales database and applying it to Orient International; this Court

rejected that rate as uncorroborated, holding that the Department failed to explain how the 216.01 percent rate reflected "commercial reality." *Lifestyle I* at 1298-99. This Court also expressed doubt as to the rate's reasonableness given the range of other calculated margins. *Id.* After a second and third remand in which the court rejected the Department's next proffered methodology, the court in *Lifestyle IV* accepted a revised calculation resulting in an AFA rate of 83.55 percent that was based on a more carefully reasoned analysis of the data. *Lifestyle IV* at 1302. As the statute does not create a different standard for calculating AFA-based margins for separate rate respondents or as against the PRC-wide entity, *see* 19 U.S.C. § 1677e, once the AFA rate under this order was questioned, the Department must satisfy, with substantial evidence, to support continued use of the 216.01 percent AFA margin. When determining the PRC-wide entity or all others respondents rate based on AFA, the rate "must be based on a reasonable reading of the record evidence. Specifically, it must be based on reliable evidence in the record and must be relevant to the all others respondents." *MacLean-Fogg Co.,* 853 F. Supp. 2d at 1340-41. The use of a 2004-2005 new shipper margin as AFA is even less sensible for a 2011 review than it was in 2007 – the Department cannot continue to rely on this outdated, unsupported margin.

As the CIT has noted, "Indications that a rate may not reflect commercial reality include **significantly lower rates for cooperating respondents and the**

***presence of more recent, conflicting data***.” *Lifestyle I* at 1298 (emphasis added).

In the review at bar, both of these red flags are present. In the <u>nine</u> reviews completed since the Department calculated the 216.01 percent rate, <u>no</u> calculated margin exceeded 43.23 percent, and most ranged between zero and 20 percent – the rates for cooperating respondents thus are demonstrably “significantly lower” than the 216.01 percent rate the Department seeks to apply:

- In the 2006 administrative and new shipper reviews, calculated margins ranged between 17.93 and 19.93 percent. *Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Review*, 73 Fed. Reg. 49,162 (Dep't of Commerce Aug. 20, 2008).

- In the January – July 2007 new shipper review the calculated margins ranged between zero and 33.01 percent. *Wooden Bedroom Furniture from the People's Republic of China: Final Results of Fourth New Shipper Reviews*, 73 Fed. Reg. 64,916 (Dep't of Commerce Oct. 31, 2008).

- In the 2007 administrative and new shipper review the calculated margin was 29.89 percent. *Wooden Bedroom Furniture from the People's Republic of China: Amendment Final Results of Antidumping Duty Administrative Review and New Shipper Review*, 74 Fed. Reg. 55,810 (Dep't of Commerce Oct. 29, 2009).

- In an interim 2009 new shipper review the calculated margin was zero. *Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty New Shipper Review*, 75 Fed. Reg. 44,764 (Dep't of Commerce July 29, 2010).

- In the 2008 administrative review, the calculated margin was 43.23 percent. *Wooden Bedroom Furniture from the People's Republic of China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (Dep't of Commerce Aug. 18, 2010).

- In the full year 2009 new shipper reviews the calculated margins were zero. *Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty New Shipper Reviews*, 76 Fed. Reg. 9747 (Dep't of Commerce Feb. 22, 2011).

- In the 2009 administrative review, the only calculated margin was 41.75 percent. *Wooden Bedroom Furniture from the People's Republic of China: Final Results and Final Rescission in Part*, 76 Fed. Reg. 49,729 (Dep't of Commerce Aug. 11, 2011) ("*2009 Final Results*").

- In the full year 2010 new shipper review, the calculated margins were zero. *Wooden Bedroom Furniture from the People's Republic of China: Final Results of the 2010 Antidumping Duty New Shipper Review*, 76 Fed. Reg. 68,138 (Dep't of Commerce Nov. 3, 2011).

- In the 2011 administrative review at issue here, the only calculated margin was 41.75 percent. *Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011*, 78 Fed. Reg. 35,249 (Dep't of Commerce June 12, 2013) ("*2011 Final Results*").

These are precisely the sort of "more recent, conflicting data" that the CIT held – in a previous review of the same order at issue here – reflects an impermissible disconnect from commercial reality. *Lifestyle I* at 1298.

This Court's recent decision in *Dongtai Peak* further reiterates this point. In *Dongtai Honey*, the Court upheld the Department's reliance of an AFA rate as applied to the PRC-wide entity in the tenth administrative review of that order. *Dongtai Peak*, 777 F.3d at 1356. That AFA rate, however, had been determined in the sixth and seventh administrative reviews – only two administrative reviews

prior to the one at issue in that case.[1] *Dongtai Peak*, 777 F.3d at 1347-48. The facts in *Dongtai Peak* distinguish it from the facts applicable to the present action. Here, the Department has relied on an AFA rate for the PRC-wide entity that has been given a cursory corroboration in nine separate administrative proceedings and decided that "there is no need to corroborate it here [in this review]." 2011 *Final Results* IDM at 10; JA 000020.

The Department's continued use of the 216.01 percent margin in the *Final Results* is contrary to this Court's precedent and disregards information that decisively rejects the reliability or relevance of the PRC-wide entity rate. The Act requires the Department consider both the recent Court precedent and the calculated margins in every review since 2004-2005. The Act also requires information that the Department relied upon as corroborating of the continued use of an AFA rate from an earlier segment must be probative. The Department, however, has not provided a "clearer explanation for its choice," nor has it identified "ample record support" for its continued use of a margin that greatly exceeds the calculated rates of cooperating respondents. *Lifestyle I* at 1298. Specifically, the Department's sole basis for concluding that the 216.01 percent

---

[1] The Department issued a rescission of the ninth administrative review. *See Honey From the People's Republic of China: Final Rescission of Antidumping Duty Administrative Review*, 77 Fed. Reg. 34,343 (Dep't. of Commerce June 11, 2012). Thus, the AFA rate for the PRC-wide entity has only been applied in the eighth and tenth administrative review.

remained valid was that it had allegedly been corroborated as recently as the 2009 administrative review. *See* 2011 *Final Results* IDM at 10; JA 000020. But corroboration in the 2009 review does not discharge the Department's obligation to corroborate the rate in the 2011 review, particularly given the suspect nature of the analysis in the 2009 review. In the 2009 review, the Department "corroborated" the 216.01 PRC-wide AFA rate by stating that it was within the "range of the [individual] transaction-specific margins calculated" for one of the mandatory respondents, Dalian Huafeng Furniture Group. Co. ("Huafeng"). *See Memorandum from Christian Marsh to Ronald Lorentzen, "Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Wooden Bedroom Furniture from the People's Republic of China"* at 8 (Dep't of Commerce Aug. 5, 2011); JA 000048. But Huafeng's *actual calculated rate* in that review was only 41.75%. *See 2009 Final Results,* 76 Fed. Reg. at 49,734. Thus, the Department plucked out the margin on a single transaction that was not even representative of the commercial activity *of that exporter* and somehow concluded that it nevertheless was representative of the commercial activity of the PRC-wide entity at large. That is not corroboration; it is an exercise in cherry-picking. *See MacLean-Fogg*, 853 F. Supp. 2d at 1340-41; *Lifestyle I,* 768 F. Supp. 2d at 1286. That "corroboration" was insufficient in 2009, and it became still less appropriate with the passage of two more years. Absent

other independent information, the Department's use of an individual Huafeng

transaction in 2009 as "corroborating" the PRC-wide rate in 2011 falls far short of

the "substantial evidence on the record" showing that the Government must make

here.

The Department has simply asserted that it is following its precedent – this is

no substitute for a reasoned analysis, and it is analytically deficient as a matter of

law.  The Court should reverse the CIT and instruct the CIT to remand this matter

requiring that the Department reevaluate the PRC-wide entity rate.

**III.    The Department's Application of the 216.01 percent PRC-wide margin
to Shanghai Maoji Despite Intervening and Contradictory Evidence is
Punitive Rather Than Remedial**

The CIT has held that the PRC-wide rate "must be based on reliable

evidence in the record and must be relevant to the all-others respondents."

*MacLean-Fogg*, 853 F. Supp. 2d at 1340-41.   Moreover, the Department's

"responsibility is to choose 'a rate that, on this record, could reasonably be

accepted as an approximation of { . . . } {the all-others companies'} rate, albeit

with a built-in increase intended as a deterrent to non-compliance.'"  *Id.* at 1341

(citing *KYD*, 807 F. Supp. 2d at 1378).   When applying AFA under 19 U.S.C. §

1677e(b), the purpose of doing so is "to provide respondents with an incentive to

cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F.Lii*

*De Cecco DiFilippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032

16

(Fed. Cir. 2000); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) ("{t}he imposition of adverse facts can be inappropriate if it is overly punitive").

Here, the fact that every calculated margin in this proceeding since the 216.01 percent rate calculated for Kunyu in the 2004-2005 new shipper review has been drastically lower necessarily renders that rate unreliable and irrelevant to the PRC-wide entity. That rate is roughly 400 percent higher than the next highest calculated margin in the previous seven reviews – as was the case in *MacLean-Fogg*, "{the Department} has not explained, based on the evidence in the record, how the all-others rate calculated is not punitive rather than remedial." *MacLean-Fogg*, 853 F. Supp. 2d at 1343.

The Department is obliged to determine a rate for Shanghai Maoji that reasonably reflects its commercial reality, even if the Department determines that Shanghai Maoji is not entitled to a separate rate. And the 216.01 percent rate, calculated for a low-volume exporter in a 2004-2005 new shipper review, is no more corroborative or probative of Shanghai Maoji's sales experience and commercial reality in 2011 than it was of Orient International's in 2007. Therefore, the continued use of the 216.01 percent rate despite the overwhelming, intervening, contradictory evidence is punitive not remedial, particularly as applied to Shanghai Maoji, and is not based on the "best available information" contrary to

19 U.S.C. § 1677b(c)(1).  As such, the Department is foreclosed from continued use of the AFA rate as the PRC-wide entity rate and the Court should remand this matter to the CIT directing them to require the Department to calculate a reasonable, corroborated margin in light of these intervening determinations.

## CONCLUSION

For the reasons set forth above, Plaintiff-Appellants respectfully request that this Court hold the Department's Final Results to be unsupported by substantial evidence and not in accordance with law and remand this matter with instructions for the CIT to direct the Department to recalculate the PRC-wide entity rate.

Respectfully submitted,

  /s/ Alexander H. Schaefer_____
Alexander H. Schaefer
Hea Jin (Jini) Koh
CROWELL & MORING LLP
1001 Pennsylvania Ave, N.W.
Washington, D.C.  20004
Phone:  (202) 624-2500
Facsimile:  (202) 628-5116
aschaefer@crowell.com

Dated:        March 23, 2015          Counsel for Mark David, a division of Baker, Knapp & Tubbs, Inc.

# <u>ADDENDUM OF REQUIRED DOCUMENTS</u>

*Mark David, a division of Baker, Knapp & Tubbs, Inc. v. United States*,
24 F. Supp. 3d 1355 (Ct. Int'l Trade 2014)

**MARK DAVID, A Division of Baker, Knapp & Tubbs, Inc., Plaintiff,**

**and**

**Bryan Ashley International, Metropolis Manufacturing, Inc. (dba Vaughan Benz), and MGM Resorts International Design, Consolidated Plaintiffs,**

**v.**

**UNITED STATES, Defendant,**

**and**

**American Furniture Manufacturers: Committee for Legal Trade and Vaughan–Bassett Furniture Co., Inc., Defendant–Intervenors.**

**Slip Op. 14–132.**
**Court No. 13–00233.**

United States Court of
International Trade.

Nov. 18, 2014.

**Background:** Importer filed suit challenging Department of Commerce's final results of administrative review of antidumping duty order covering wooden bedroom furniture (WBF) from People's Republic of China (PRC). Importer moved for judgment on agency record.

**Holdings:** The Court of International Trade, Tsoucalas, Senior Judge, held that:

(1) determination that exporter was government controlled was reasonable, and

(2) PRC-wide antidumping duty rate assigned to exporter was reasonable.

Motion denied.

**1. Customs Duties ⚷84(6)**

"Substantial evidence," as required to uphold Department of Commerce's antidumping determination, means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Tariff Act of 1930, § 516A(b)(1)(B)(i), 19 U.S.C.A. § 1516a(b)(1)(B)(i).

> See publication Words and Phrases for other judicial constructions and definitions.

**2. Administrative Law and Procedure ⚷754.1, 763**

Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether the particular decision is arbitrary, capricious, or an abuse of discretion.

**3. Administrative Law and Procedure ⚷754.1, 763, 791**

An abuse of discretion by an administrative agency occurs where the agency's decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors.

**4. Administrative Law and Procedure ⚷763**

An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.

**5. Customs Duties ⚷21.5(3)**

In antidumping duty proceedings involving merchandise from a non-market economy (NME), Department of Commerce presumes that all exporters are government controlled and therefore subject to the country-wide antidumping duty rate; however, Commerce does allow exporters to rebut this presumption by establishing the absence of both de jure and de facto government control, and those exporters are eligible for a separate rate.

**6. Customs Duties ⚷21.5(3)**

When an exporter from a non-market economy (NME) fails to rebut the presumption of government control, Depart-

ment of Commerce employs that presumption and applies the country-wide antidumping duty rate to the exporter's merchandise.

### 7. Customs Duties ⟺21.5(3)

Department of Commerce reasonably determined that exporter of wooden bedroom furniture (WBF) from People's Republic of China (PRC) was government controlled, in assigning exporter 216.1% antidumping duty rate as part of PRC-wide entity, based on adverse facts available (AFA), where exporter failed to respond to Commerce's questionnaires regarding separate rate eligibility during administrative review of antidumping duty order covering WBF.

### 8. Customs Duties ⟺21.5(3)

Department of Commerce's assignment to exporter of wooden bedroom furniture (WBF) from People's Republic of China (PRC) of a 216.01% antidumping duty rate, as part of PRC-wide entity, was reasonable, based on adverse facts available (AFA) due to exporter's failure to cooperate with administrative review of antidumping duty order and failure to demonstrate independence from government control, where Commerce calculated rate based on prior new shipper review, Commerce corroborated 216.01% rate for PRC-wide entity during prior administrative review of WBF, and PRC-wide rate was not punitive.

### 9. Customs Duties ⟺21.5(3)

A dumping margin based upon adverse facts available (AFA) must be a reasonably accurate estimate of the exporter's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance with the administrative review of the antidumping duty order.

### 10. Customs Duties ⟺21.5(3)

Although a higher adverse facts available (AFA) antidumping duty rate creates a stronger deterrent to noncompliance with an administrative review of an antidumping duty order, Department of Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin; Commerce must select secondary information that has some grounding in commercial reality.

### 11. Customs Duties ⟺21.5(5)

To corroborate secondary information used to calculate an adverse facts available (AFA) dumping margin, Department of Commerce must find that it has probative value; secondary information has probative value if it is both reliable and relevant to the respondent. Tariff Act of 1930, § 776(c), 19 U.S.C.A. § 1677e(c).

———————

Alexander H. Schaefer and Hea J. Koh, Crowell & Moring LLP, of Washington, DC, for Mark David, a division of Baker, Knapp & Tubbs, Inc., plaintiff.

Peter Koenig, Squire Patton Boggs LLP, of Washington, DC, for Bryan Ashley International, Metropolis Manufacturing, Inc., and MGM Resorts International Design, consolidated plaintiffs.

Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Of counsel on the brief was Shana A. Hofstetter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Joseph W. Dorn, J. Michael Taylor and P. Lee Smith, King & Spalding LLP, of Washington, DC, for American Furniture Manufacturers Committee for Legal Trade and Vaughan–Bassett Furniture Company, Inc., defendant-intervenors.

TSOUCALAS, Senior Judge:

Plaintiff, Mark David, a division of Baker, Knapp, and Tubbs, Inc. ("Mark David" or "Plaintiff"), moves for judgment on the agency record contesting defendant United States Department of Commerce's ("Commerce") determination in *Wooden Bedroom Furniture From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 2011,* 78 Fed. Reg. 35,249 (June 12, 2013). Consolidated Plaintiffs, Bryan Ashley International, Metropolis Manufacturing, Inc., and MGM Resorts International Design, join and supplement Plaintiff's motion. *See* Pls. Adoption of Pl. Br. at 1–3. Commerce and defendant-intervenors, American Furniture Manufacturers Committee for Legal Trade and Vaughan–Bassett Furniture Company, Inc., oppose Plaintiff's motion. Def.'s Resp. to Pl.'s and Consolidated Pls.' Rule 56.2 Mot. for J. on the Agency R. at 1–2. The AFMC's Resp. in Opp'n to Mark David's Rule 56.2 Mot. for J. on the Agency R. at 1. For the following reasons, Plaintiff's motion is denied.

## Background

In January 2005, Commerce issued an antidumping duty order covering wooden bedroom furniture ("WBF") from the People's Republic of China ("PRC"). *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: WBF From the PRC,* 70 Fed. Reg. 329, 330 (Jan. 4, 2005). Commerce acknowledged Shanghai Maoji Imp. And Exp. Co., Ltd. ("Maoji") as qualifying for a separate rate status and assigned a dumping margin of 6.68%. *WBF From the PRC: Corrected Notice of Court Decision Not in Harmony With the Final Determination of Sales at Less Than Fair Value and Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order Pursuant to Court Decision,* 76 Fed. Reg. 53,409, 53,-411–53,412 (Aug. 26, 2011).

Commerce initiated the seventh administrative review during the period of review beginning on January 1, 2011 through December 31, 2011. *WBF From the PRC: Initiation of Administrative Review,* 77 Fed. Reg. 12,235, 12,237 (Feb. 29, 2012). During the seventh administrative review, Commerce named Maoji as a mandatory respondent. *WBF From the PRC: Preliminary Results of Antidumping Duty Administrative Review, 2011,* 78 Fed. Reg. 8493, 8494 (Feb. 6, 2013) ("*Preliminary Results*"). Maoji responded to Commerce's antidumping questionnaire and supplemental questionnaires between July and October 2012. *Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: WBF from the PRC,* at 3 (February 1, 2013) ("*Preliminary Decision Memorandum*"). During the review Maoji notified Commerce that it was not practicable for it to provide a response to the Section D questionnaire or the supplemental Section A questionnaire. *See* Letter from Maoji to Commerce re: WBF from PRC (Aug. 3, 2012), Pub. Rec. 325, Attach. 1 at 1.[1]

Commerce issued its preliminary results on February 6, 2013. *Preliminary Results,* 78 Fed. Reg. at 8493. Commerce

---

1. Hereinafter, documents in the public record will be designated "PR" without further spec-

ification except where relevant.

preliminarily determined that Maoji failed to answer all sections of Commerce's questionnaire, and thus failed to establish its eligibility for a separate rate status. *Id.* at 8494. As a result, Commerce treated Maoji as part of the PRC-wide entity. *Id.* at 8494.

Commerce also preliminarily determined that the PRC-wide entity, including Maoji, did not cooperate to the best of its ability during the review. *Id.* at 8494. Therefore, Commerce relied on adverse facts available ("AFA") to determine the dumping margin for the PRC-wide entity. *Id.* at 8494. Commerce assigned an AFA rate of 216.01 percent to the PRC-wide entity, including Maoji, which was calculated based on a 2004–2005 New Shipper Review. *WBF From The PRC: Final Results of the 2004–2005 Semi–Annual New Shipper Reviews*, 71 Fed. Reg. 70,739, 70,-741 (December 6, 2006). Commerce stated that the rate had been corroborated in previously completed administrative reviews in which it found that the 216.01% rate for the PRC-wide entity was within "the range of the calculated margins on the record of the [fifth] administrative review." Preliminary Results at 15.

On March 8, 2013, Plaintiff, Mark David USA ("Plaintiff"), an importer of WBF, filed case briefs with Commerce. WBF from the PRC: Issues and Decision Memorandum for the Final Results of Review, at 1 (June 5, 2013) ("Decision Memorandum"). Mark David contests whether the 216.01% margin, as assigned to Maoji as part of the PRC-wide entity was reasonable.

Commerce maintained its preliminary findings in its *Final Results*. *WBF From the PRC: Final Results of Antidumping Duty Administrative Review; 2011*, 78 Fed. Reg. 35,249, 35,249 (June 12, 2013) ("*Final Results* ").

## JURISDICTION and STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930 as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006).

**[1]** This Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

**[2–4]** Additionally, "courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed.Cir.1998). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *WelCom Prods., Inc. v. United States*, 36 CIT ——, 865 F.Supp.2d 1340, 1344 (2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed.Cir.2005)). "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir.2001).

## DISCUSSION

Maoji does not dispute that they failed to participate fully in the review, and that they therefor can be subjected to an AFA rate. The issue before the court is instead

whether Commerce's application of the 216.01% PRC-wide AFA rate to Maoji was reasonable. Plaintiff argues that the 216.01% PRC-wide AFA rate was neither reliable nor relevant. *See* Pl.'s Mem. Supp. R. 56.2 J. Agency R. at 5–10 ("Pl.'s Mem."). According to Plaintiff, Commerce applied an "outdated" and "unsupported" margin that did not reflect Maoji's commercial reality. *Id.*

**[5, 6]** In antidumping duty proceedings involving merchandise from a non-market economy ("NME"), as is the case here, Commerce presumes that all respondents are government controlled and therefore subject to the country-wide rate. *See Sigma Corp. v. United States,* 117 F.3d 1401, 1405 (Fed.Cir.1997). Commerce does allow respondents to rebut this presumption, however, by establishing the absence of both de jure and de facto government control. *Id.* Respondents who make this showing are eligible for a separate rate. *Id.* When a company fails to rebut the presumption of government control, Commerce employs that presumption and applies the country-wide rate to its merchandise. *See id.*

**[7]** Plaintiff does not appear to dispute Commerce's finding that Maoji failed to rebut the presumption of government control in the *Final Results*. During the review Maoji notified Commerce that it was not practicable for it to provide a response to the Section D questionnaire or the supplemental Section A questionnaire. *See* PR 325 attach. 1 at 1. Commerce determined that Maoji was a part of the PRC-wide entity. *See Shandong Mach. Imp. & Exp. Co. v. United States,* 33 CIT 810, 815, 2009 WL 2017042 (2009). Because Maoji failed to respond to Commerce's questionnaires regarding its separate rate eligibility during the review, Commerce reasonably concluded that Maoji failed to demonstrate its absence of gov-

ernment control. *See Sigma Corp.,* 117 F.3d at 1405.

**[8–10]** The main issue for the court to evaluate is therefor whether Commerce's application of the 216.01% PRC-wide AFA rate to Maoji, which has not demonstrated its independence from the PRC-wide entity, was reasonable. A margin based upon AFA must be "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance." *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir.2000). "[A]lthough a higher AFA rate creates a stronger deterrent, Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin." *Gallant Ocean (Thai.) Co. v. United States,* 602 F.3d 1319, 1323 (Fed.Cir.2010) (citing *De Cecco,* 216 F.3d at 1032). "Commerce must select secondary information that has some grounding in commercial reality." *Id.* at 1324.

**[11]** These standards grow out of 19 U.S.C. § 1677e(c), which provides that when Commerce relies on secondary information, it "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c). To corroborate secondary information, Commerce must find that it has "probative value." *KYD, Inc. v. United States,* 607 F.3d 760, 765 (Fed.Cir.2010). Secondary information has "probative value" if it is both reliable and relevant to the respondent. *Mittal Steel Galati S.A. v. United States,* 31 CIT 730, 734, 491 F.Supp.2d 1273, 1278 (2007).

Plaintiff relies heavily on *Lifestyle Enter., Inc. v. United States* to support its argument that the 216.01% rate was unreasonable. *Lifestyle Enterprise, Inc. v.*

*United States*, 35 CIT ——, ——, 768 F.Supp.2d 1286 (2011) ("*Lifestyle I*"), *after remand*, 36 CIT ——, 844 F.Supp.2d 1283 (2012) ("*Lifestyle II*"), *after second remand*, 36 CIT ——, 865 F.Supp.2d 1284 (2012) ("*Lifestyle III*"), *after third remand*, 37 CIT ——, 896 F.Supp.2d 1297 (2013) ("*Lifestyle IV*"). Pl's Mem. at 7–9. Specifically, Plaintiff contends that this Court previously discredited the application of the 216.01% PRC-wide AFA in *Lifestyle I*. The court disagrees. In *Lifestyle I*, importers challenged the third administrative review of WBF from the PRC. *See Lifestyle I*, 768 F.Supp.2d at 1292. Orient, a mandatory respondent, was originally subject to an antidumping margin of 216.01%. *See id.* at 1297. However, in *Lifestyle I*, Orient was not assigned the PRC-wide rate because "Orient had affirmatively demonstrated an absence of de jure or de facto control." *See id.* at 1296–1297, 1298 n. 12 ("Commerce did not assign the PRC-wide rate per se, but rather selected the same rate based on separate considerations."). Furthermore, the Court found in *Lifestyle I* that Commerce failed to address the "dramatic increase in Orient's rate from 7.68% to 216.01%." *Id.* at 1299. Because Orient qualified for separate rate status, the Court in *Lifestyle I* held that Commerce was required to either explain its determination or corroborate Orient's AFA rate so that it relates to Orient's commercial reality. *Id.* at 1298–1299. Contrary to Plaintiff's assertion, the Court in *Lifestyle I* did not hold that the PRC-wide rate is uncorroborated.

Following three subsequent remands where the Court instructed Commerce to calculate an AFA rate which has some grounding in Orient's commercial reality, the Court in *Lifestyle IV* sustained Commerce's findings in its *Third Remand Results* of WBF from the PRC, applying a rate of 83.55% to Orient's exports of WBF. *Lifestyle IV*, 896 F.Supp.2d at 1301–1302.

The Court determined that the rate was sufficiently corroborated and reflected Orient's commercial reality. *Id.*

Unlike Orient in *Lifestyle I*, here, Maoji failed to qualify for separate rate status. As a result it received the PRC-wide AFA rate. Because Maoji was part of the PRC-wide entity, Commerce was not required to calculate a separate AFA rate relevant to Maoji's commercial reality. *See Peer Bearing*, 32 CIT at 1313, 587 F.Supp.2d at 1327 ("[T]here is no requirement that the PRC-wide entity rate based on AFA relate specifically to the individual company."). Commerce was only required to corroborate the rate to the PRC-wide entity. *See id.* Therefore, Plaintiff's reliance on *Lifestyle I* is misplaced. *Lifestyle I* does not call into question the PRC-wide rate as applied to the PRC-wide entity, rather it only discredits its application to Orient, which successfully established the absence of both de jure and de facto government control. *Id.*

Plaintiff also argues that Commerce has previously applied significantly lower rates to cooperating respondents in nine other administrative reviews of WBF in support of its contention that the rate is unreliable. Pl.'s Mem. at 8–9. The court does not find that these rates support Plaintiff's argument. The rates that Plaintiff relies on were assigned to cooperating separate rate respondents. *See id.* The rates were not assigned to respondents who were considered to be a part of the PRC-wide entity. Plaintiff does not show how these rates conflict with a rate applied to a respondent who fails to qualify for separate rate status. In the instant case, as discussed above, unlike the nine cooperating respondents, Maoji is an uncooperative respondent that was found to be a part of the PRC-wide entity.

Additionally, Plaintiff insists that the "continued use" of the 216.01% margin in the *Final Results* is "contrary to this Court's precedent and disregards information that decisively rejects the reliability or relevance of the PRC-wide entity rate." Pl.'s Mem. at 9. Plaintiff's argument is unpersuasive. This Court has noted that, "[u]nlike other sources of information, there are no independently verifiable sources for calculated dumping margins, other than previous administrative determinations." *Peer Bearing Co.–Changshan v. United States*, 32 CIT 1307, 1314, 587 F.Supp.2d 1319, 1328 (2008). Therefore, when calculating the AFA rate for the PRC-wide entity, "the reliability of the calculation stems from its basis in prior verified information in previous administrative reviews," and "[i]f Commerce chooses a calculated dumping margin from a prior segment of the proceeding, it is not necessary to question the reliability of the margin if it was calculated from verified sales and cost data." *Id.*, 587 F.Supp.2d at 1328. Here, Commerce calculated the rate based on the 2004–2005 New Shipper Review. *Decision Memorandum* at 9–10. During a 2009 administrative review of WBF, Commerce corroborated the 216.01% rate for the PRC-wide entity. *Id.* at 10. Commerce deemed this rate to be relevant to this administrative review. *Id.* at 10. As discussed, Plaintiff failed to provide evidence indicating that this rate was unreliable. Because the 216.01% rate has been corroborated for the PRC-wide entity, and the evidence Plaintiff provided lacked probative value, Commerce's determination was reasonable. *See Peer Bearing*, 32 CIT at 1314, 587 F.Supp.2d at 1328.

Finally, Plaintiff argues that the PRC-wide rate is insists that Commerce failed to support Maoji's rate increase from 6.68% in previous reviews to the present 216.01% rate applied here. As discussed above, Maoji had previously qualified for separate rate status, and subsequently lost it in this review, therefore Maoji's previous rate is irrelevant in the instant case. The court finds that the 216.01% rate is supported by substantial evidence, thus "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure." *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed.Cir. 2010).

### Conclusion

For all the foregoing reasons, the court sustains Commerce's *Final Results*. Plaintiff's motion for judgment on the agency record is denied.



## IN RE: KEURIG GREEN MOUNTAIN SINGLE–SERVE COFFEE ANTITRUST LITIGATION.

### MDL No. 2542.

United States Judicial Panel on Multidistrict Litigation.

June 3, 2014.

Before MARJORIE O. RENDELL, Acting Chairman, CHARLES R. BREYER, LEWIS A. KAPLAN, SARAH S. VANCE, ELLEN SEGAL HUVELLE, and R. DAVID PROCTOR, Judges of the Panel.

## PROOF OF SERVICE

U.S. Court of Appeals for the Federal Circuit
Mark David, a division of Baker, Knapp & Tubbs, Inc. v. United States
2015-1276, 1287

Pursuant to Federal Circuit Rule 25(d) and the Administrative Order Regarding Electronic Case Filing 2(D), I hereby certify that on the 23rd day of March, 2015, I have caused service of the foregoing document by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Docketing Activity to all parties with an email address of record:


Peter Koenig, Esq.
Squire Patton Boggs
2550 M Street NW
Washington, DC 20037
peter.koenig@squirepb.com

Douglas G. Edelschick, Esq.
Department of Justice
Commercial Litigation Branch, Civil Division
PO Box 480
Ben Franklin Station
Washington, DC 20044
douglas.edelschick@usdoj.gov

James Michael Taylor, Esq.
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
jmtaylor@kslaw.com


/s/ Alexander H. Schaefer
Alexander H. Schaefer

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I, Alexander H. Schaefer, of the law firm Crowell & Moring LLP, hereby certify that the foregoing Brief of Plaintiff-Appellant Mark David, a division of Baker, Knapp & Tubbs, Inc., complies with the Rules of this Court in that it contains 4,229 words including text, footnotes and headings.  This is within the limit of 14,000 words set by FRAP R. 32(a)(7)(B)(i).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font, which also complies with the typeface requirements of FRAP R. 32(a)(5) and the type style requirements of FRAP R. 32(a)(6).

/s/ Alexander H. Schaefer
_____
Alexander H. Schaefer, Esq.

Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
Phone:  (202) 624-2500
Facsimile:  (202) 628-5116
aschaefer@crowell.com

March 23, 2015